UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: XARELTO (RIVAROXABAN) | ) | MDL No. 2592 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION:  L |
| OLLIE MILES | ) | |
| | ) | JUDGE FALLON |
| | ) | MAG. JUDGE NORTH |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | Civil Action No.:_____ |
| v. | ) | |
| | ) | |
| JANSSEN RESEARCH & DEVELOPMENT LLC | ) | |
| f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL | ) | |
| RESEARCH AND DEVELOPMENT LLC; JOHNSON | ) | |
| AND JOHNSON; JANSSEN PHARMACEUTICALS, | ) | |
| INC. f/k/a JANSSEN PHARMACEUTICA INC. f/k/a | ) | COMPLAINT AND |
| ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, | ) | JURY DEMAND |
| INC.;JANSSEN ORTHO LLC; BAYER HEALTHCARE | ) | |
| PHARMACEUTICALS, INC.; BAYER PHARMA AG, | ) | |
| f/k/a BAYER SCHERING PHARMA AG; BAYER | ) | |
| CORPORATION; BAYER HEALTHCARE LLC; | ) | |
| BAYER HEALTHCARE AG; BAYER AG; and JOHN | ) | |
| DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, OLLIE MILES, brings this case against Defendants for injuries suffered as a direct result of Plaintiff's ingestion of the pharmaceutical product Xarelto®.  Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and

because Defendants are incorporated or have their principal places of business in states other than the state in which the named Plaintiff resides.

2.      This Court has jurisdiction over the non-resident Defendants because they have done business in the State of Louisiana, have committed a tort in whole or in part in the State of Louisiana, and have continuing contacts with the State of Louisiana.

3.      Venue in this district for pretrial proceedings is proper because the United States Judicial Panel on Multi-District Litigation issued a Transfer Order for *In Re: Xarelto (Rivaroxaban) Products Liability Litigation* to centralize this litigation in the Eastern District of Louisiana, MDL 2592, and pursuant to Pre-Trial Order No. 9 entered on March 24, 2015 in *In Re: Xarelto (Rivaroxaban) Products Liability Litigation*.

## PARTIES

4.      Plaintiff, at all times relevant, was and continues to be a resident and citizen of the State of Florida.

5.      Upon information and belief, Defendant JANSSEN RESEARCH & DEVELOPMENT LLC f/k/a JOHNSON AND JOHNSON PHARMACEUTICAL RESEARCH AND DEVELOPMENT LLC ("JANSSEN R&D") is a limited liability company organized under the laws of New Jersey, with a principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  Defendant JANSSEN R&D's sole member is Janssen Pharmaceuticals, Inc., (Centocor, Inc. [now known as Janssen Biotech, Inc.], a Pennsylvania corporation with its principal place of business and nerve center located at 200 Great Valley Parkway, Malvern, Pennsylvania.), which is a Pennsylvania corporation with a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.  Defendant JANSSEN R&D is the holder of the approved New Drug Application ("NDA") for Xarelto® as

well as the supplemental NDA.  As part of its business, JANSSEN R&D is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto® and rivaroxaban.  Upon information and belief, and at all relevant times, Defendant, JANSSEN R&D, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto® for use as an oral anticoagulant.

6.      Upon information and belief, Defendant JANSSEN R&D has transacted and conducted business, and has derived substantial revenue from goods and products used in the State of Florida and the State of Louisiana.  JANSSEN R&D expected or should have expected its acts to have consequence within the United States of America and the State of Florida and the State of Louisiana.

7.      Defendant JOHNSON & JOHNSON ("J&J"), is a fictitious name adopted by Defendant JOHNSON & JOHNSON COMPANY, a New Jersey corporation which has its principal place of business at One Johnson & Johnson Plaza, New Brunswick, Middlesex County, New Jersey 08933.  At all times relevant, Defendant J&J was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Xarelto®.  J&J transacts substantial business within the State of Louisiana and the State of Florida.

8.      Upon information and belief, Defendant JANSSEN PHARMACEUTICALS, INC. f/k/a JANSSEN       PHARMACEUTICA       INC.       f/k/a       ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. ("JANSSEN PHARM") is a Pennsylvania Corporation, having a principal place of business at 1125 Trenton-Harbourton Road, Titusville, New Jersey 08560.  As part of its business, JANSSEN PHARM is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto® and rivaroxaban.  Upon information and belief, and at all relevant times, Defendant, JANSSEN PHARM, was in the business of and did

design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug
Xarelto® for use as an oral anticoagulant.

9.      Upon information and belief, Defendant, JANSSEN PHARM has transacted and conducted
business, and has derived substantial revenue from goods and products used in the States of Florida
and Louisiana, and expected or should have expected its acts to have consequences within the
United States of America, and the States of Florida and Louisiana.

10.     Upon information and belief, Defendant JANSSEN ORTHO LLC ("JANSSEN ORTHO")
is a limited liability company organized under the laws of Delaware, having a principal place of
business at State Road 933 Km 01, Street Statero, Gurabo, Puerto Rico 00778. Defendant
JANSSEN ORTHO is a subsidiary of Johnson & Johnson.  The only member of JANSSEN
ORTHO LLC is OMJ PR Holdings, which is incorporated in Ireland with a principal place of
business in Puerto Rico.  Accordingly, JANSSEN ORTHO LLC is a citizen of Delaware, Ireland,
and Puerto Rico for purposes of determining diversity under 28 U.S.C. § 1332.

11.     As part of its business, JANSSEN ORTHO is involved in the research, development, sales,
and marketing of pharmaceutical products including Xarelto® and rivaroxaban.  Upon information
and belief, and at all relevant times, Defendant, JANSSEN ORTHO, was in the business of and
did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug
Xarelto® for use as an oral anticoagulant.

12.     Upon information and belief, Defendant, JANSSEN ORTHO has transacted and conducted
business, and has derived substantial revenue from goods and products used in the States of Florida
and Louisiana, and expected or should have expected its acts to have consequence within the
United States of America and the States of Florida and Louisiana.

13.     Upon    information    and    belief,    Defendant    BAYER    HEALTHCARE PHARMACEUTICALS, INC. is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New Jersey.  As part of its business, BAYER HEALTHCARE PHARMACEUTICALS, INC. is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto® and rivaroxaban. Upon information and belief, Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC., was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto® for use as an oral anticoagulant.

14.     Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC. was formerly known as Berlex Laboratories, Inc., which was formerly known as Berlex, Inc. and BAYER HEALTHCARE PHARMACEUTICALS, INC. is the same corporate entity as Berlex, Inc. and Berlex Laboratories, Inc.

15.     Upon    information    and    belief,    Defendant    BAYER    HEALTHCARE PHARMACEUTICALS, INC., has transacted and conducted business, and has derived substantial revenue from goods and products used in the States of Florida and Louisiana, and expected or should have expected its acts to have consequence within the United States of America and the States of Florida and Louisiana.

16.     Upon information and belief, Defendant BAYER PHARMA AG is a pharmaceutical company domiciled in Germany.  Upon information and belief, and at all relevant times, Defendant, BAYER PHARMA AG, was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute the drug Xarelto® for use as an oral anticoagulant.

17.    Defendant BAYER PHARMA AG is formerly known as Bayer Schering Pharma AG and is the same corporate entity as Bayer Schering Pharma AG.  Bayer Schering Pharma AG is formerly known as Schering AG and is the same corporate entity as Schering AG.

18.    Upon information and belief, Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006.

19.    Upon information and belief, Bayer Schering Pharma AG was renamed BAYER PHARMA AG effective July 1, 2011.

20.    As part of its business, BAYER PHARMA AG is involved in the research, development, sales, and marketing of pharmaceutical products including Xarelto® and rivaroxaban.

21.    Upon information and belief, Defendant, BAYER PHARMA AG, has transacted and conducted business, and  has  derived substantial revenue from goods and products used in in the States of Florida and Louisiana, and expected or should have expected its acts to have consequence within the United States of America and the States of Florida and Louisiana.

22.    Upon information and belief, Defendant BAYER CORPORATION is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.

23.    Upon information and belief, Defendant BAYER CORPORATION is the sole member of BAYER HEALTHCARE LLC, which owns 100% of Schering Berlin, Inc., which owns 100% of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.  As such, Defendant BAYER CORPORATION is a parent of Defendant BAYER HEALTHCARE PHARMACEUTICALS, INC.

24.    At all relevant times, Defendant BAYER CORPORATION was engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing,

and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the prescription drug Xarelto®.

25.    At relevant times, Defendant BAYER CORPORATION conducted regular and sustained business in the States of Florida and Louisiana, by selling and distributing its products in the States of Florida and Louisiana and engaged in substantial commerce and business activity in the States of Florida and Louisiana.

26.    Upon information and belief, Defendant BAYER HEALTHCARE LLC is a limited liability company duly formed and existing under and by the virtue of the laws of the State of Delaware, with its principal place of business located in the State of New York.  BAYER HEALTHCARE LLC's sole member is Bayer Corporation, and is wholly owned by Bayer Corporation, which is an Indiana corporation with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania 15205.  Accordingly, BAYER HEALTHCARE LLC is a citizen of Delaware, New York, Indiana, and Pennsylvania for purposes of determining diversity under 28 U.S.C. § 1332.

27.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC has transacted and conducted business in the States of Florida and Louisiana, and derived substantial revenue from interstate commerce, and expected or should have expected that its acts would have consequences within the United States of America, in the States of Florida and Louisiana.

28.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE LLC was in the business of and did design, research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto® for use as an oral anticoagulant.

29.    Upon information and belief, Defendant BAYER HEALTHCARE AG is a company domiciled in Germany and is the parent/holding company of Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC, and BAYER PHARMA AG.

30.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG has transacted and conducted business in the States of Florida and Louisiana, and derived substantial revenue from interstate commerce, and expected or should have expected that its acts would have consequences within the United States of America, and in the States of Florida and Louisiana.

31.    Upon information and belief, at all relevant times, Defendant BAYER HEALTHCARE AG exercises dominion and control over Defendants BAYER CORPORATION, BAYER HEALTHCARE LLC, BAYER HEALTHCARE PHARMACEUTICALS, INC., and BAYER PHARMA AG.

32.    Upon information and belief, Defendant BAYER AG is a German chemical and pharmaceutical company that is headquartered in Leverkusen, North Rhine-Westphalia, Germany.

33.    Upon information and belief, and at all relevant times, Defendant BAYER AG is the parent/holding company of all other named Defendants, and at all relevant times, Defendant BAYER AG has transacted and conducted business, and  derived substantial revenue from interstate commerce in the States of Florida and Louisiana, and derived substantial revenue from interstate commerce, and expected or should have expected that its acts would have consequences within the United States of America, in the States of Florida and Louisiana.

34.    Upon information and belief, at all relevant times, Defendant BAYER AG was in the business of and did design research, manufacture, test, advertise, promote, market, sell, and distribute Xarelto® for use as an oral anticoagulant.

35.    Upon information and belief, Defendants John Does 1-5 are corporations or other legal entities, the names and addresses of residences of which are unknown.  At all times alleged herein, Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

## NATURE OF THE CASE

36.    Defendants manufactured, marketed, advertised, distributed, promoted, labeled, tested, and sold Xarelto® as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to treat deep vein thrombosis ("DVT"), and to treat pulmonary embolisms ("PE").

37.    Defendants applied for an NDA for Xarelto® in July of 2008.

38.    Xarelto® was approved by the Food and Drug Administration ("FDA") on July 1, 2011 to reduce the risk of blood clots, DVT and PE following knee and hip replacement surgery.  On November 4, 2011 Xarelto® was also approved as an anti-coagulant primarily used to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation.   On November 2, 2012 the FDA expanded the use of Xarelto® to include the treatment of patients with DVT and PE.

39.    As stated on Defendants' website, "Xarelto® is a prescription medicine used to reduce the risk of stroke and blood clots in people with atrial fibrillation, not caused by a heart valve

problem."[1]

40.    Defendants' website notes that, "Xarelto® has been proven to lower the chance of having a stroke if you have atrial fibrillation (AFib), not caused by a heart valve problem.  Xarelto® is an anticoagulant, or blood-thinning medicine that works by helping to keep blood clots from forming."  Defendants claim that Xarelto® has "been prescribed to more than nine million people around the world to help treat or reduce the risk of dangerous clots" and that Xarelto® "begins working a few hours after you start taking it, and keeps working for as long as you take it."[2]

41.    Defendants state that patients taking Xarelto® do not need regular blood monitoring and there are no known dietary restrictions.  In addition, Defendants state that patients with AFib only need to take Xarelto® once a day.[3]

42.    Defendants state that patients with AFib are five times more likely than persons without AFib to suffer from a stroke and that "disability is more likely to be severe" and "the outcome is almost twice as likely to be fatal" and "the chances of having another major stroke go up."[4]

43.    Xarelto® (Rivaroxaban) is designed to work by inhibiting a protein involved in the coagulation process, called "Factor Xa," which interrupts the blood clotting process and prevents another protein, Thrombin, from forming.

44.    Defendants' marketing materials represent that an advantage of Xarelto® is that it does not require patients to undergo monitoring with blood tests and that there are no dietary restrictions for patients taking Xarelto®.

45.    Defendants' boxed warnings did not address the increased risk for serious and fatal bleeding, despite the fact that the information listed on their website originating from the Rocket

---

[1] http://www.xarelto-us.com/atrial-fibrillation
[2] http://www.xarelto-us.com/how-xarelto-works
[3] http://www.xarelto-us.com/how-xarelto-is-different
[4] http://www.xarelto-us.com/knowing-your-stroke-risk

AF clinical trial sponsored by Defendants, states that in comparison to warfarin, patients taking Xarelto® have more gastrointestinal bleeding and need more transfusions.[5]  In spite of this reference regarding bleeding, the information is still inadequate because this information was not conveyed in the boxed warning on the Xarelto® label.[6]

46.    The FDA has stated that "rivaroxaban should not be approved unless the manufacturer conducts further studies to support the efficacy and safety of rivaroxaban" and the FDA website notes that "[a]dverse event reports of thrombocytopenia and venous thromboembolic events were identified" in relationship to Xarelto®.[7]  However, this information was not portrayed in the warning section on the warning label.  The lack of efficacy of the medication for patients taking Xarelto® was not disclosed, resulting in patients ingesting Xarelto® and physicians prescribing Xarelto® without sufficient information to make an accurate decision.

47.    Defendants misleadingly marketed Xarelto® using print advertisements, online advertisements, marketing on their website and video advertisements.

48.    Defendants placed an advertisement in the January 2013 issue of *WebMD* magazine that resulted in the FDA sending a letter stating that Defendant' advertisement was "false or misleading because it minimizes the risks associated with Xarelto® and makes a misleading claim."[8]

49.    It has been reported that, "[a]bout 130,000 U.S. prescriptions were written for Xarelto® in the first three months of 2012" resulting in large profits as Xarelto® costs approximately $3,000 a year versus $200 for generic warfarin.[9]

50.    Due to the defective nature of Xarelto®, persons who were prescribed and ingested

---

[5] http://www.xareltohcp.com/reducing-stroke-risk/rocket-clinical-study.html
[6] http://www.xareltohcp.com/reducing-stroke-risk/safety.html
[7] http://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/ucm403457.htm
[8] http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/EnforcementActivitiesbyFDA/WarningLettersandNoticeofViolationLetterstoPharmaceuticalCompanies/UCM357833.pdf
[9] http://www.reuters.com/article/2012/06/14/us-drugs-bloodthinners-idUSBRE85D06G20120614

Xarelto®, for even a brief period of time, including Plaintiff, were at increased risk for developing life-threatening uncontrolled bleeding.  In addition, U.S. Cardiologists have stressed that Xarelto® does not have "a known antidote for a bleeding emergency, as warfarin does."[10]

51.     Defendants concealed their knowledge that Xarelto® can cause life threatening, irreversible bleeding from Plaintiff, other consumers, the medical community and the general public.  The Defendants did not adequately warn of the irreversible nature of Xarelto®.  Specifically, Defendants did not adequately inform consumers and the prescribing medical community about the risks of uncontrollable bleeding associated with Xarelto®, nor did Defendants warn or otherwise advise on how to provide medical assistance for a patient in the event that bleeding did occur.

52.     Defendants did not adequately warn about the lack of an antidote to reverse uncontrolled bleeding caused by Xarelto®.  Defendants merely indicated that there was a risk for bleeding, without addressing the issue of reversing the effects of Xarelto® should bleeding occur.  Other safer available alternative to Xarelto® have an antidote that can reverse uncontrolled bleeding.

53.     Xarelto® still does not have a "black box" warning informing patients and/or prescribing physicians that Xarelto® can cause irreversible bleeding.  A March 2014 label change still does not contain a "black box" warning regarding irreversible bleeding.[11]

54.     The current warnings are inadequate.  Defendants have failed in their duties to warn and protect the consuming public, including Plaintiff.

55.     Xarelto® is unreasonably dangerous and defective as formulated, putting consumers, including Plaintiff, at an unreasonable risk of suffering injury and death.

56.     Defendants withheld knowledge of the increased risk of irreversible bleeding in users of

---

[10] http://www.reuters.com/article/2012/06/14/us-drugs-bloodthinners-idUSBRE85D06G20120614
[11] http://www.xareltohcp.com/sites/default/files/pdf/xarelto_0.pdf#zoom=100

Xarelto®.

57.    As the developers, manufacturers and distributers of Xarelto®, Defendants knew or should have known that Xarelto® was associated with irreversible bleeding.

58.    Defendants continued to promote Xarelto® as a safe and effective treatment for patients despite having knowledge of the irreversible bleeding associated with Xarelto®.

59.    Worldwide sales of Xarelto® are expected to reach over $3.5 billion in 2018.[12]

60.    Defendants have enjoyed financial success from Xarelto® while at the same time placing consumers at risk of severe uncontrolled bleeding and death.

61.    Consumers, including Plaintiff, who have used Xarelto® to reduce the risk of stroke due to AFib or to reduce the risk of blood clots, particularly DVT and PE, following knee or hip replacement surgery, have several alternative safer products available to treat the conditions and have not been adequately warned about the significant risks and lack of benefits associated with Xarelto®.

62.    Defendants concealed from Plaintiff and Plaintiff's physicians the risks associated with the use of Xarelto®.

63.    Due to the defects in design, manufacture and warnings, the Xarelto® product ingested by Plaintiff was unreasonably dangerous at the time it left Defendants' control.  The increased risks and subsequent injuries associated with Plaintiff's Xarelto® use were the direct and proximate result of Defendants' conduct.

## PLAINTIFF'S EXPERIENCE AND INJURIES

64.    Plaintiff, at all times relevant, was and continues to be a resident and citizen of the State of Florida.

---

[12] http://www.bloomberg.com/news/2014-02-28/bayer-sees-2014-sales-of-up-to-57-5-billion-on-new-drugs.html

65.    Plaintiff began using Xarelto® as prescribed by her physician on or about 2011.

66.    Plaintiff Ollie Miles experienced bleeding while on Xarelto® and on August 2, 2017 was hospitalized for anemia and was transfused with packed red blood cells.

67.    Plaintiff Ollie Miles suffered life-threatening bleeding and was caused to sustain severe personal injuries, pain, suffering, and emotional distress as a direct result of her ingestion of Xarelto®.

68.    Plaintiff would not have used Xarelto® had Defendants properly disclosed the risks associated with its use, as safer alternatives were available.

## COUNT I
## (STRICT LIABILITY)

69.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.  Plaintiff pleads this Count in the broadest sense possible, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the Plaintiff's resident state. Plaintiff further alleges as follows:

70.    At the time of Plaintiff's injuries, Defendants' Xarelto® was defective and unreasonably dangerous to foreseeable consumers, including Plaintiff.

71.    At all times relevant, the Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed, and/or have recently acquired the Defendants who have designed, researched, manufactured, tested, advertised, promoted, marketed sold, and distributed Xarelto®, that was used by the Plaintiff.

72.    Defendants' Xarelto® was expected to and did reach the Plaintiff without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

14

73.     The Xarelto® designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Xarelto®, it was more dangerous than an ordinary consumer would expect, and was unreasonably dangerous to its intended users.

74.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiff in particular; and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff.

75.     Plaintiff could not, by the exercise of reasonable care, have discovered Xarelto's® defects herein mentioned and perceived its danger.

76.     Defendants knew, or should have known that at all times herein mentioned, their Xarelto® was in a defective condition, and was and is inherently dangerous and unsafe.

77.     At the time of the Plaintiff's use of Xarelto®, Xarelto® was being used for the purposes and in a manner normally intended, namely to reduce the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, to reduce the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

78.     The Xarelto® designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature and the Defendants failed to adequately warn of said risk.

79.     Xarelto® was defective due to inadequate post-marketing surveillance and/or warnings

because after Defendants knew or should have known of the risks of serious side effects including, life-threatening bleeding, as well as other severe and permanent health consequences from Xarelto®, they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote their product, Xarelto®.

80.     Defendants are strictly liable for Plaintiff's injuries in the following ways: Xarelto® as designed, manufactured, sold and supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition; Defendants failed to properly market, design, manufacture, distribute, supply and sell Xarelto®; Defendants failed to warn and place adequate warnings and instructions on Xarelto®; and Defendants failed to adequately test Xarelto®.

81.     As a direct and proximate result of the foregoing, Defendants have become strictly liable to Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of a defective product, Xarelto®.

82.     Defendants' defective design, manufacturing defect, and inadequate warnings of Xarelto® were acts that amount to willful, wanton, and/or reckless conduct by Defendants. Defendants' conduct warrants an award of punitive damages.

83.     Plaintiff has suffered, and will continue to suffer, injury, emotional distress, harm and economic loss as alleged herein.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants jointly and severally for damages, together with costs of this action, and demand trial by jury of all issues raised herein.

## COUNT II
## (MANUFACTURING DEFECT)

84.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

85.    Xarelto® was designed, manufactured, marketed, promoted, sold, and introduced into the stream of commerce by Defendants.

86.    When it left the control of Defendants, Xarelto® was expected to, and did reach Plaintiff without substantial change.

87.    Xarelto® was defective when it left Defendants' control and was placed in the stream of commerce, in that there were foreseeable risks that exceeded the benefits of the product and/or it deviated from product specifications and/or applicable federal requirements, and posed a risk of serious injury and death.

88.    Xarelto® was more likely to cause serious bleeding that maybe irreversible, permanently disabling, and life-threatening than other anticoagulants.

89.    Plaintiff used Xarelto® in substantially the same condition it was in when it left the control of Defendants and any changes or modifications were foreseeable by Defendants.

90.    Plaintiff and his healthcare providers did not misuse or materially alter their Xarelto®.

91.    As a direct and proximate result of the use of Xarelto®, Plaintiff suffered serious physical injury, harm, damages, economic loss, and will continue to suffer such harm, damages, and economic loss in the future.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants jointly and severally for damages, together with costs of this action, and demand trial by jury of all issues raised herein.

## **COUNT III**
## **(DESIGN DEFECT)**

92.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

93.    Defendants were engaged in the business of designing, manufacturing, testing, marketing, distributing and selling Xarelto® for the sale to, and use by, members of the public. The Xarelto® manufactured and designed by Defendants reached Plaintiff without substantial change and was ingested as directed. The Xarelto® was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

94.    Xarelto® is defective in its design, because as designed Xarelto® is capable of causing serious personal injures such as those suffered by Plaintiff during foreseeable use.

95.    Xarelto® contains defects in its design which render the drug dangerous to consumers, such and Plaintiff, when used as intended or as reasonably foreseeable by Defendants. The design defects, including but not limited to the lack of an antidote or reversal agent, render Xarelto® more dangerous than other anticoagulants and cause an unreasonable increased risk of injury, including, but not limited to bleeding.

96.    Xarelto® is defective due to inadequate warnings and instruction because Defendants knew, or should have known, of the risk and danger of serious bodily harm and or death from the use of Xarelto®, but failed to provide an adequate warning to patients and physicians.

97.    Because of the defects in Xarelto®, it is, and at all times material has been, unreasonably dangerous.

98.    As a direct and proximate result of the defective and unreasonably dangerous Xarelto® product, Plaintiff suffered injuries and damages, including bleeding.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants jointly and severally for damages, together with costs of this action, and

demand trial by jury of all issues raised herein.

## COUNT IV
## (FAILURE TO WARN)

99.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully

set forth herein and further alleges as follows:

100.    The Xarelto® ingested by Plaintiff was defective and unreasonably dangerous when it left

the possession of the Defendants in that the Xarelto® contained warnings which were inadequate

and insufficient to alert physicians or consumers to the dangerous risks associated with the product,

including, without limitation, irreversible bleeding caused by Xarelto®.

101.    The Xarelto® ingested by Plaintiff was used for its intended purpose.

102.    Defendants knew or reasonably should have known that the warnings provided to users of

Xarelto® regarding the risks associated with its use were incorrect and misleading because

Xarelto® was unaccompanied by proper warnings regarding all possible side effects associated

with its use and the comparative severity, incidence, and duration of such adverse effects.

103.    Plaintiff did not have the same knowledge as Defendants and no adequate warning or other

clinically relevant information and data was communicated to Plaintiff or to Plaintiff's physician.

104.    The Defendants had a continuing duty to warn Plaintiff or his doctors of the dangers

associated with Xarelto®.

105.    Despite the fact that Defendants knew or should have known that Xarelto® caused

unreasonable and dangerous side effects, they continued to promote and market Xarelto® without

stating that there existed safer and more or equally effective alternative drug products and/or

providing adequate clinically relevant information and data.

106.    As a direct and proximate result of the Defendants' failure to warn, Plaintiff, has sustained

serious and permanent injuries, including bleeding.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT V
## (NEGLIGENCE)

107.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

108.    Defendants owed a duty to the general public, and specifically to Plaintiff, to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing, labeling, and distribution of their prescription medications, including the Xarelto® at issue in this lawsuit.  Defendants failed to exercise reasonable care in the design of Xarelto® because as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.  Defendants also failed to exercise reasonable care in the marketing and labeling of Xarelto® because Defendants failed to warn, that as designed, Xarelto® was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

109.    Defendants breached their duty and were negligent in, but not limited to, designing, manufacturing and selling Xarelto® by, among other things, failing to use due care in developing, testing, designing and manufacturing Xarelto® so as to avoid the aforementioned risks to individuals when Xarelto® is being used for treatment; failing to accompany their product with proper or adequate warnings, or labeling regarding adverse risks associated with the use of Xarelto®; in the designing, manufacturing and placing into the stream of commerce a product

which was unreasonably dangerous for its reasonably foreseeable use, which Defendants knew or should have known could cause injury to Plaintiff; failing to remove Xarelto® from the market when Defendants knew or should have known of the likelihood of serious side effects and injury to its users; failing to adequately warns users, consumers and physicians about the severity, scope and likelihood of uncontrolled bleeding and related dangerous conditions to individuals taking Xarelto®; and representing to physicians that Xarelto® was safe and effective for use.

110.    As a direct and proximate result of the foregoing negligence of Defendants, Plaintiff has suffered extreme pain, bleeding and additional surgery that has resulted in pain and bleeding. Defendants' failure to exercise reasonable care in the design, study, development, manufacture, promotion, sale and marketing of Xarelto® was a proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT VI
## (BREACH OF EXPRESS WARRANTY)

111.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

112.    Defendants researched, developed, designed, tested, manufactured, distributed, marketed, sold and/or otherwise released into the stream of commerce Xarelto®, and directly marketed the product to consumers and healthcare professionals, including Plaintiff.

113.    Xarelto® materially failed to conform to those representations made by Defendants in package inserts, and otherwise, concerning the properties and effects of Xarelto®.  Such failures by Defendants constituted a material breach of express warranties made, directly or indirectly, to

Plaintiff concerning Xarelto® sold to Plaintiff.

114.    As a direct, foreseeable and proximate result of Defendants' breaches of express warranties, Plaintiff suffered serious injury, when Plaintiff's physician, in reasonable reliance upon such express warranties, prescribed Xarelto® for Plaintiff.

115.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff was exposed to Xarelto®, and Plaintiff suffered and continues to suffer from the injuries and damages described in this complaint

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT VII
## (BREACH OF IMPLIED WARRANTY)

116.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

117.    Defendants impliedly warranted to Plaintiff and all others similarly situated that Defendants' Xarelto® product was reasonably fit for its intended use and it was designed, manufactured and sold in accordance with good design, engineering and industry standards.

118.    The Xarelto® product was defective in its manufacture or design and was therefore not fit for its intended use and was not designed, manufactured or sold in accordance with good design, engineering and industry standards.

119.    Defendants breached the above warranties in that the Xarelto® was defective as set forth above, was not fit for its intended use and was not designed, manufactured or sold in accordance with good design, engineering and industry standards.

120.    As a direct and proximate result of the foregoing breaches of warranties, Plaintiff suffered severe injuries, when Plaintiff ingested Xarelto® in reasonable reliance upon the implied warranties.

121.    Plaintiff's losses and injuries are permanent and continuing.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT VIII
## (FRAUD)

122.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

123.    Defendants owed a duty to provide accurate and complete information regarding Xarelto®.

124.    Defendants knew or should have known that Xarelto® was unreasonably dangerous and defective and caused serious bleeding.

125.    Despite their knowledge, Defendants omitted material facts in advertisements and other materials available to the public, including Plaintiff and Plaintiff's physician, concerning the safety of Xarelto®.

126.    Defendants made false and/or misleading representations of material facts, and omitted material facts from the consuming public, including Plaintiff and Plaintiff's physician, concerning the safety of Xarelto®.

127.    Defendants' marketing and sale of Xarelto® continues to place consumers of Xarelto® at risk for serious injuries.

128.    Defendants' statements and omissions were made with the intent that members of the

public, including Plaintiff and Plaintiff's physician, would rely on them.

129.     As a direct and proximate result of the Defendants' acts of fraud, Plaintiff suffered serious injuries including, but not limited to bleeding.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT IX
## (FRAUDULENT MISREPRESENTATION)

130.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

131.     The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, and/or the FDA, and the public in general, that Xarelto® had been tested and was found to be safe and/or effective.

132.     The representations made by Defendants were, in fact, false.

133.     When these representations were made by Defendants, they knew those representations to be false and Defendants willfully, wantonly and recklessly disregarded whether the representations were true.

134.     These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase Xarelto®, which evinced a reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiff.

135.    At the time the aforesaid representations were made by the Defendants and at the time the Plaintiff used Xarelto®, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

136.    In reliance upon these representations, the Plaintiff was induced to and did use Xarelto®, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

137.    Defendants knew and were aware or should have been aware that Xarelto® had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

138.    Defendants knew or should have known that Xarelto® had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

139.    Defendants brought Xarelto® to the market, and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.  As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT X
## (FRAUDULENT CONCEALMENT)

140. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

141. At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants misrepresented the safety of Xarelto® for its intended use.

142. Defendants knew or were reckless in not knowing that its representations were false.

143. In representations to Plaintiff, and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentionally omitted that Xarelto® was not as safe as other forms of anticoagulant treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery; and that the risks of adverse events with Xarelto® were higher than those with other forms of anticoagulant treatment for reducing the risk of stroke and systemic embolism in patients with non-valvular atrial fibrillation, reducing the risk of recurrence of DVT and/or PE, and for prophylaxis of DVT for patients undergoing hip and knee replacement surgery.

144. Defendants were under a duty to disclose to Plaintiff, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Xarelto®, including but not limited to the heightened risks of life-threatening bleeding.

145. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Xarelto®, including the Plaintiff, in particular.

146. Defendants' concealment and omissions of material facts concerning the safety of Xarelto® was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, and Plaintiff's

physicians, hospitals and healthcare providers into reliance, continued use of Xarelto®, and actions thereon, and to cause them to purchase, prescribe, and/or dispense Xarelto® and/or use the product.

147.    Defendants knew that Plaintiff, and Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Xarelto®, as set forth herein.

148.    Plaintiff, as well as Plaintiff's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

149.    As a direct and proximate result of one or more of these wrongful acts or omissions of the Defendants, Plaintiff was caused to suffer serious and dangerous side effects including, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT XI
## (PUNITIVE DAMAGES)

150.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

151.    At all times relevant, Defendants knew or should have known that Xarelto® was inherently dangerous with respect to the risk of uncontrolled bleeding and the risk of death.

152.    Defendants misrepresented facts concerning the safety of Xarelto® by making false representations about and concealing information regarding Xarelto®. Defendants misrepresented

and downplayed the risks of serious injuries including uncontrolled bleeding and death associated with the use of Xarelto®.

153.    As a proximate result of Defendants' acts and omissions, Plaintiff suffered uncontrolled internal bleeding, resulting from Plaintiff's ingestion of Xarelto®.

154.    Defendants' actions were performed intentionally, willfully, wantonly, and/or purposefully on Plaintiff.

155.    Defendants continued to promote the safety of Xarelto®, while providing consumers with insufficient warnings about the risk of uncontrolled bleeding, even after Defendants knew of the risk.

156.    Defendants' conduct was committed with wanton and willful disregard for the rights and safety of consumers, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## COUNT XII
## (NEGLIGENT MISREPRESENTATION)

157.    Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

158.    Defendants had a duty to accurately and truthfully represent to the medical and healthcare community, Plaintiff and the public, that Xarelto® had not been adequately tested and found to be safe and effective.  Defendants knew, or should have known, that there were dangerous side effects resulting from the use of Xarelto®.

159.     Defendants failed to exercise ordinary care in the representations concerning Xarelto®
while they were involved its manufacture, sale, testing, quality assurance, quality control, and
distribution in interstate commerce, because Defendants negligently misrepresented Xarelto's®
high risk of unreasonable, dangerous, adverse side effects, including uncontrolled bleeding and
death.

160.     Defendants breached their duty to Plaintiff by concealing material information, including
adverse information regarding the safety and effectiveness of Xarelto®.  Defendants failed to
perform sufficient testing which, if properly performed, would have shown that Xarelto® had
serious side effects.  Defendants failed to include adequate warnings with Xarelto® that would
alert users to the potential risks and serious side effects of Xarelto®.  Defendants failed to warn
consumers that Xarelto® has a risk of uncontrolled bleeding and death.

161.     As a foreseeable, direct and proximate result of the negligent misrepresentation of
Defendants as set forth herein, Defendants knew, and had reason to know, that the Xarelto® had
been insufficiently tested, and that Xarelto® lacked adequate and accurate warnings, and that it
created a high risk, and/or higher than acceptable risk, and/or higher than reported and represented
risk, of adverse side effects, including, uncontrolled bleeding and death.

162.     As a direct and proximate result of the dangerous nature of Xarelto®, Plaintiff suffered
serious injuries, including uncontrolled bleeding.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment
against Defendants, jointly and severally for damages, together with costs of this action, and
demands trial by jury of all issues raised herein.

## COUNT XIII:
## (VIOLATION OF FLORIDA CONSUMER PROTECTION LAWS)

163.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully

set forth herein. Plaintiff pleads this Count in the broadest sense available under the law, to include pleading same pursuant to all substantive law that applies to this case, as may be determined by choice of law principles, regardless of whether arising under statute and/or common law. Plaintiff further alleges as follows:

164.    As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side effects including but not limited to, life-threatening bleeding, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care.

165.    Plaintiff used Xarelto® and suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

166.    Defendants violated consumer protection laws through their use of false and misleading representations or omissions of material fact relating to the safety of Xarelto®.

167.    Defendants uniformly communicated the purported benefits of Xarelto® while failing to disclose the serious and dangerous side effects related to the use of Xarelto® and its safety, its efficacy, its usefulness. Defendants made these misrepresentations to physicians, the medical community at large, and to patients and consumers, such as Plaintiff.

168.    Defendants' conduct in connection with Xarelto® was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because Defendants misleadingly, falsely, and/or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy, and advantages of Xarelto®.

169.    As a result of the foregoing acts and omissions, Plaintiff has suffered and incurred damages, including medical expenses and other economic and non-economic damages.

WHEREFORE, Plaintiff respectfully demands that this Honorable Court enter judgment

against Defendants, jointly and severally for damages, together with costs of this action, and demands trial by jury of all issues raised herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against defendants for damages allowable by law against Defendants together with interest, costs and attorney's fees as well as all such other relief as the Court may deem proper.

## DEMAND FOR A JURY TRIAL

The Plaintiff respectfully demands a trial by jury on all Counts and as to all issues.

Respectfully submitted,

Dated: April 2, 2019

/s/ Edward A. Wallace
Edward A. Wallace
Timothy E. Jackson
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, Illinois 60603
312-346-2222
312-346-0022 FAX